656 So.2d 1156 (1995)
Lucille CRAFT and Donald Cowart
v.
STATE of Mississippi.
No. 91-KA-01178-SCT.
Supreme Court of Mississippi.
May 25, 1995.
*1157 William E. Goodwin, John H. Ott, McComb, for appellant.
Michael C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice, for the Court:

I. INTRODUCTION
The case before the Court is a criminal appeal for the sale of cocaine. On March 8, 1991, Lucille Craft and Donald Cowart were indicted for the unlawful sale of cocaine and for conspiracy to sell cocaine on April 4, 1990, in the Bergland Community of Pike County, Mississippi. Trial was held on November 5, 1991, in the Circuit Court of Pike County, Mississippi, before the Honorable Joe Pigott. Upon hearing all the evidence, the jury found both defendants guilty of conspiracy to sell cocaine and found Craft guilty of selling cocaine *1158 but found Cowart not guilty of selling cocaine. The primary basis for appeal centers around the alleged erroneous admission of evidence.
Finding no error warranting a reversal, we affirm.

STATEMENT OF THE CASE
On March 8, 1991, Lucille Craft and Donald Cowart were indicted for the unlawful sale of cocaine and for conspiracy to sell cocaine. Several defense motions were filed to Sever the defendants' cases, Compel Disclosure of Confidential Informant, Disclosure of Impeaching Information, and motions to Require State To Reveal Any Agreement Entered Into Between The State and Any Prosecution Witness That Could Conceivably Influence His Testimony. The State filed a Motion In Limine to prevent any comment concerning the criminal record of Troy Magee, which was heard in the pre-trial hearings and granted.
Trial was held on November 5, 1991, in the Circuit Court of Pike County, Mississippi, before the Honorable Joe Pigott. Upon hearing all the evidence, the jury found both defendants guilty of conspiracy to sell cocaine and found Craft guilty of selling cocaine but found Cowart not guilty of selling cocaine.
Aggrieved by the verdict the defendants timely appealed raising the following issues for review:
I. WAS THE DEFENDANT IMPROPERLY DENIED HIS RIGHT TO CROSS-EXAMINE THE STATE'S CHIEF WITNESS TO SHOW BIAS, PREJUDICE OR MOTIVE?
II. WAS THE DEFENDANT IMPROPERLY DENIED HIS RIGHT TO QUESTION A DEFENSE WITNESS CONCERNING THE STATE'S CHIEF WITNESS' USE OF DRUGS AND RELATIONSHIP WITH THE POLICE AUTHORITIES IN ORDER TO SHOW BIAS, PREJUDICE OR MOTIVE?
III. WAS THE DEFENSE IMPROPERLY DENIED THE RIGHT TO CROSS-EXAMINE TROY MAGEE ABOUT PRIOR INCONSISTENT STATEMENTS PURSUANT TO MISSISSIPPI RULE OF EVIDENCE 801(D)(1)?
IV. DID THE DISTRICT ATTORNEY WRONGFULLY ALLUDE TO OTHER ILLEGAL ACTS OR CONVERSATIONS AND WAS THE DEFENDANT PREJUDICED BY THIS ACTION?
V. DID THE COURT IMPROPERLY ALLOW POLICE DETECTIVE PERRY ASHLEY TO CHARACTERIZE A CONVERSATION HE HEARD OVER A BODY TRANSMITTER INSTEAD OF REQUIRING HIM TO TESTIFY ONLY AS TO WHAT WAS ACTUALLY SAID?

STATEMENT OF FACTS
The facts of this case are limited and center around a drug buy that took place on April 4, 1990, in the Bergland Community of Pike County, Mississippi. The events began at the McComb District Bureau Office in McComb, Mississippi, with a meeting attended by Agent C.V. Glyniss, Detective Perry Ashley and the confidential informant, Troy Magee (hereinafter Troy). The three men met to prepare for the subsequent drug buy. Prior to leaving for the buy Agent Glyniss searched the person of Troy in the presence of Detective Ashley for any contraband and found none. Agent Glyniss subsequently attached a body wire to Troy to monitor the transaction. While Detective Ashley and Troy remained in the office, Agent Glyniss got Troy's car keys and searched his vehicle for any contraband and found none.
Immediately thereafter, Troy left in his car followed by Detective Ashley and Agent Glyniss in their car with the monitoring equipment for the body mike worn by Troy. The men drove to the Bergland Community where the defendants resided. Troy proceeded to Avenue L in McComb where the defendants' trailer was located. All three men testified that no stops occurred between their leaving the office and Troy arriving at the trailer. The agents monitored the transaction from their car located around a corner and could see the defendants across a church lot from the trailer. Agent Glyniss, Detective *1159 Ashley and Troy testified that they had known the defendants for many years and recognized their voices over the body mike as being those of the defendants because of prior personal conversations with the defendants.
When Troy arrived at the trailer he turned on the body mike which was working properly. Donald Cowart was in the yard working on a car when Troy arrived. Cowart was the first person Troy spoke with and Troy asked him for "two more rocks." Cowart responded that he needed the money then so that he didn't have to make but one trip. Troy then gave Cowart forty dollars provided at the pre-buy meeting from Agent Glyniss. Cowart took the money and went inside the trailer.
After Cowart entered the trailer, Craft exited and went out to speak with Troy. Troy apologized for bothering them since they were moving and said that "the other rocks I purchased was very powerful `caine' and wanted two more." Craft said "okay" and went over to the trailer axle to get a bag. In the meantime, Cowart had come out and was standing with them when Craft retrieved the bag. Craft retrieved two small plastic bags containing `rocks' from the bag behind the trailer axle and handed them to Troy. Cowart then handed Craft the forty dollars from Troy.
Troy left the defendants and drove to the McComb office followed by Agents Ashley and Glyniss. All three men testified that no stops occurred between leaving the trailer and arriving at the office. Troy gave Glyniss the two rocks at the office, which were subsequently melted in a plastic bag to be tested. Troy was initially given eighty dollars for drug purchases so he returned the other unused forty dollars. Agent Glyniss then paid Troy forty dollars for his work, which was his customary fee for being a confidential informant.
Expert testimony by John Maddox and Ted Chapman of the Mississippi Crime Lab revealed that the rocks tested were cocaine. Every State witness testified that the substances purchased from the defendants had not been altered or modified in any way while in each individual's control.

DISCUSSION OF ISSUES

I. WAS THE DEFENDANT IMPROPERLY DENIED HIS RIGHT TO CROSS-EXAMINE THE STATE'S CHIEF WITNESS TO SHOW BIAS, PREJUDICE OR MOTIVE?
The defendants allege that they were improperly denied their right to cross-examine Troy, the confidential informant, to show bias, prejudice, or motive under Mississippi Rule of Evidence 616. They allegedly were denied an opportunity to explore facts about favorable treatment Troy supposedly received from Agent Glyniss in exchange for his favorable testimony. Allegedly, Agent Glyniss had previously gotten Troy out of trouble in Pike and Walthall Counties.
The defendants cite Suan v. State, 511 So.2d 144, 147 (Miss. 1987), as their basis for this argument. Suan held in pertinent part that:
Evidence that a material witness has received favored treatment at the hands of law enforcement authorities, particularly where that witness is himself subject to prosecution, is probative of the witness' interest or bias and may be developed through cross-examination or otherwise presented to the jury.
See Malone v. State, 486 So.2d 367, 368-69 (Miss. 1986); Hall v. State, 476 So.2d 26, 28 (Miss. 1985); Barnes v. State, 460 So.2d 126, 131 (Miss. 1984).
The defense was specifically permitted to ask Troy if Agent Glyniss had gotten him out of trouble in the past. Also, not once in Zenobia's proffered testimony as a defense witness was it alleged or even insinuated by her that Troy received favorable treatment to illustrate his possible bias. Likewise, the defendants did not question Agent Glyniss on cross-examination as to whether he had ever given Troy any favorable treatment by getting him out of trouble.
The only possibility that the defendants were denied their right to show such bias could have been in Troy's testimony wherein several State objections were sustained on relevancy grounds. However, excerpts from *1160 the trial transcript illustrate the defense was given wide latitude pursuant to MRE 611(b) to show bias under MRE 616.
Cross-examination of Troy Magee by Mr. Ott:
Q: You said that you met Agent Glyniss in 1989?
A: Yes, sir.
Q: Were you doing drugs at that time?
A: No, sir.
Q: You weren't doing drugs in 1989, is that right?
A: I ...
BY MR. RUSHING: Your Honor, I object to the line of questioning.
BY THE COURT: Overrule the objection. I believe he answered.
BY MR. OTT: Just wanted to be sure.
A: As I stated the last court time I was here, that I had tried marijuana early in the year '89.
Q: Uh-huh. You said that you didn't have any other kind of controlled substances after 1989 when you smoked marijuana, is that right?
A: Yes, sir.
Q: Are you sure you don't want to change that testimony today?
A: No, sir.
Q: Okay. Have you ever smoked crack cocaine?
A: No, I haven't.
Q: In the year 1990 when you were working and trying to earn this extra money as an informant, were you smoking and consuming crack cocaine yourself for your own personal use?
A: No, sir.
.....
Q: Do you know Zenobia Isaac?
A: Yes, I do.
Q: And who is she?
A: She's a friend.
Q: How close a friends is she?
A: We are good friends.
Q: And she stayed with you some and she was living with you, wasn't she, during 1990?
BY MR. SMITH: Object to relevancy, you Honor, unless counsel can show the relevance to this case.
BY THE COURT: What is the relevancy?
BY MR. OTT: The relevancy, your Honor, is to prove how well she knew him and he knew her.
BY THE COURT: Well, he said that he knows her.
BY MR. OTT: Yes, sir, I'm inquiring as to the extent of how well they know each other.
BY THE COURT: I hear your question, I understand your question, but I don't see the relevancy of it.
BY MR. OTT: Okay. I'll come back to that.
BY MR. SMITH: Your honor, we object to counsel  .
BY THE COURT: I don't know whether you'll come back to it or not, Mr. Ott.
BY MR. OTT: Well, we'll try to.
BY THE COURT: All right, sir.
Q: Now, Mr. Magee, since you became an informant, your income from informing on people determines the amount of income you make, doesn't it?
A: I don't understand your question.
Q: Okay. Would you say that the more people you snitch on, the more money you make?
A: I have a job to try to put drug dealers in jail, and you got a job to try to keep then out of jail.
Q: And you know that the more people you have arrested, the more money you make, isn't that true?
A: If I go out and bust someone I will get paid for it.
Q: Okay, Let me ask you again. The more people you have arrested, the more money you make, isn't that right?
A: Yes, sir.
Q: Okay. And in fact you averaged during 1990 seven hundred dollars a month in cash money?
A: Yes, sir.

*1161 Q: And this all was paid from Mr. C.V. Glyniss?
A: Yes, sir.
Q: Okay. And isn't Mr. Glyniss known as the Lone Ranger?
BY MR. SMITH: Objection to relevancy, your Honor.
BY THE COURT: I'll let him answer that.
A: I don't know about the Lone Ranger, you asked me that same question before today, the last time I was in Court.
Q: And you are still saying you didn't know him as the Lone Ranger, is that what you're saying?
A: Yes, sir.
Q: You're going to give the same answer to that question?
A: Yes, sir.
Q: You didn't make any record of this income that you earned as an informant, did you?
A: No, sir.
Q: You don't have any income tax records 
BY MR. SMITH: Objection to relevancy, your Honor.
BY THE COURT: I sustain.
Q: Isn't it true that the Lone Ranger or Mr. C.V. Glyniss has gotten you out of trouble before in the past?
BY MR. SMITH: Object to relevancy, your Honor.
BY THE COURT: I'll let him answer that.
A: No, sir, he hadn't got me out of trouble.
Q: Never gotten you out of trouble?
A: (No answer).
Q: None?
BY MR. SMITH: Objection, the witness has answered the question.
BY THE COURT: I'll let him answer. This is cross-examination.
Q: Sir?
A: No, sir.
Q: Do you deny that C.V. Glyniss took care of your hot checks for you?
A: No, sir, he didn't.
Q: He didn't?
A: No, sir.
Q: You 
A:  I have called him about it, but I took care of it myself. He didn't do anything about it.
Q: Do you carry a Walthall County Sheriff's badge in your glove box of your car?
A: No, sir.
Q: Do you carry a nine millimeter pistol with a shoulder holster?
A: No, sir.
Q: You don't have any permit to carry such a weapon, do you, sir?
A: No, sir.
Q: Do you carry a .25 automatic?
A: No, sir.
Q: This past New Year's Eve did you assault anybody with this .25?
BY MR. SMITH: Object
BY MR. RUSHING: Objection your Honor.
BY THE COURT: Sustained.
Q: Have you ever been in trouble for drugs?
BY MR. SMITH: Object, your Honor.
BY THE COURT: Mr. Ott you know that's not relevant. I sustain the objection.
Q: In January of 1981 did you sell cocaine for your own use?
BY MR. RUSHING: Objection your Honor.
BY THE COURT: Mr. Ott, all persons are presumed to be not guilty; now, if there has been a conviction, that is something that is different, but unless there has been a conviction all persons are presumed to be not guilty of any offense, even though they are charged with an indictment. They are presumed to be not guilty unless and until proven guilty and unless there is a conviction. We have discussed this already.
BY MR. OTT: Yes, sir. Will the Court's ruling permit me to present conditions that 

*1162 BY THE COURT: We have discussed this and I'm ashamed that you here in front of the jury are trying to bring up something that I have already discussed with you, and you already have a definite understanding.
....
Q: Did you ever tell Zenobia Isaac that you did not want her to testify against you because she knew too much about you?
A: No, sir.
Q: Did you use drugs in the presence of Zenobia Isaac in 
BY MR. RUSHING: Objection your Honor.
BY THE COURT: I don't see the relevance of this. This is a case wherein the charges are those of sale of crack cocaine. The defendants are Mrs. Lucille Craft and Donald Cowart. Those are the things that are relevant in this case.
Q: Did you make a remark to Zenobia Isaac that you wanted to  that you were going to take Lucille Craft down?
A: No, sir.
....
Q: Did you ever threaten Zenobia Isaac that if she didn't do everything you told her to do that you would set her up for a drug sale?
BY MR. RUSHING: I object to relevancy your Honor.
BY THE COURT: I sustain.
(emphasis added)
The defendant argues that he was not given the wide latitude on cross-examination to which he is entitled under MRE 611(b) and MRE 616 when impeaching through bias of a witness. However, as the record indicates, he was given wide latitude in his questions and was specifically permitted to question Troy about any possible favorable treatment from the police. Therefore, the defendants' argument is contrary to the record and thus without merit. The trial court's ruling is affirmed as there was no abuse of discretion.
The defendants also alleged that they were denied their constitutional right to confront the witness who was testifying against them, citing Myers v. State, 296 So.2d 695, 700 (Miss. 1974). Myers simply says that a defendant is entitled to "fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." Id. at 700. The defendants would have this Court believe that Myers allows any questions regardless of any evidentiary barriers that also may be applicable. This argument is without merit.

II. WAS THE DEFENDANT IMPROPERLY DENIED HIS RIGHT TO QUESTION A DEFENSE WITNESS CONCERNING THE STATE'S CHIEF WITNESS' USE OF DRUGS AND RELATIONSHIP WITH THE POLICE AUTHORITIES IN ORDER TO SHOW BIAS, PREJUDICE OR MOTIVE?
Zenobia Isaac is the defense witness the appellants complain was not allowed to testify concerning Troy Magee's use of drugs and relationship with the police. The defense wanted to show Troy's bias, prejudice or motive against the defendants as his reason for testifying in favor of the State. Zenobia's testimony was initially proffered to the court outside the presence of the jury. The defense sought to have Zenobia testify, as she did in her proffered testimony, (1) that Troy used and sold drugs, (2) that Troy had the motive of setting the defendants up as illustrated by his throwing beer cans into Craft's yard, (3) that Troy carried weapons, and (4) that Troy held himself out as the police to deter anyone, including Zenobia, from trying to turn him in for an illegal act by alleging that any attempts would be futile.
Upon hearing Zenobia's proffered testimony the court made the following ruling:
Very well. Insofar as any evidence of any possession, receiving or sale or transfer of drugs, this witness, all of her testimony goes only to things that happened in December, 1990, January, 1991, and then up in March and April of 1991, and there is no testimony that goes toward the, whether the witness had drugs in his possession or used drugs on April 4, 1990. That is the date critical here, so I wouldn't think that *1163 any of that would be admissible, and it's true that hell hath no fury like a woman scorned, and they're not all in Oklahoma. Insofar as any bias of the witness, Troy Magee, toward either of the two defendants, I will permit the testimony as to that, under Rule 616, but all this about that at some time in the past she says that he had a gun  she doesn't really know even apparently what kind it is, and that he at one time said he was the police or something of that sort, that doesn't go toward his credibility at all, and something about she had seen him sell drugs, she doesn't even know what kind she's talking about. I don't know whether it's cocaine or marijuana or pharmaceuticals and so forth, and so it's just too farfetched, and in addition, of course, that would be in violation of Rule 609, because there is no evidence that he has been charged, much less tried, and definitely not convicted, and that's what that would go to. So, if there is anything with reference to bias  this throwing beer cans from a church parking lot at Lucille Craft's trailer, that would go toward showing perhaps bias on the part of the witness, but all the rest of it, I don't know of any rule that would permit her testimony as to all these other farfetched things.
Zenobia subsequently testified to the jury only regarding the incident in which Troy threw beer cans into Craft's yard and that Troy told her he did not want her to testify because she knew too much about him.
The defense contends that denying Zenobia the opportunity to tell of all of these other incidents prevented them from being able to properly impeach Troy through bias. The defense cites several cases in which the defendant was denied the opportunity to properly cross-examine a witness to show bias, but they are inapplicable to this case.
Defendants cite Suan v. State, 511 So.2d 144, 147, (Miss. 1987), in which we held that it was reversible error to prevent a defendant from showing a witness' bias because of favorable treatment the witness was to receive from the prosecution in exchange for his testimony. The record of Zenobia's proffered testimony and of the other witnesses for the State does not indicate or even imply that Troy was testifying favorably in exchange for any favorable treatment by the State, making Suan inapplicable. Likewise, the defense was allowed to question Troy about possibly receiving favorable treatment which he denied.
As this Court stated in Johnston v. State, 567 So.2d 237, 238 (Miss. 1990): "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Hentz v. State, 542 So.2d 914, 917 (Miss. 1989). The record does not indicate that the trial court improperly denied the defendant his right to impeach Troy through limiting Zenobia's testimony, especially since her proffered testimony indicated that she was not going to tell of any favorable treatment Troy might have received. Therefore, the trial court is affirmed in its ruling on this issue as it did not abuse its discretion in this area.

III. WAS THE DEFENSE IMPROPERLY DENIED THE RIGHT TO CROSS-EXAMINE TROY MAGEE ABOUT PRIOR INCONSISTENT STATEMENTS PURSUANT TO MISSISSIPPI RULE OF EVIDENCE 801(D)(1)?
The defense's use of MRE 801(d)(1) in the case sub judice is misplaced. The defense argues that they were improperly denied the right to cross-examine Troy Magee about `prior inconsistent statements' under MRE 801(d)(1) and MRE 611(a). The basis for this allegation is a pre-trial in limine motion brought by the State, which was granted, to prohibit the defendant from introducing information about a prior misdemeanor conviction of Troy Magee. However, since Troy had yet to testify, MRE 801(d)(1)(A) was not yet applicable, since there was no testimony with which to show an inconsistency. The judge correctly ruled that the defense was permitted to show any inconsistencies if they arose during the trial and that without a conviction for perjury or other crime involving dishonesty, the misdemeanor conviction, not involving dishonesty, was inadmissible.
*1164 The defense wanted to impeach Troy about answers they believed would be given in the present case that were allegedly inconsistent with the truth because Troy had testified in prior trials as a confidential informant and consistently denied any prior conviction for a misdemeanor. The only `inconsistency' involved was an alleged inconsistency with the truth, not an inconsistency with Troy's present testimony, because he had yet to testify. According to the defense, such statements were to come from Troy's previous testimony in another case in which he testified as a confidential informant and denied having ever been convicted of a misdemeanor.
The defense was not actually trying to impeach through `inconsistent statements', since he consistently gave the same answers to the same questions and had yet to testify, but rather the defense was trying to impeach by a `conviction' under the guise of `inconsistent statements'. The defense's tactic, although not alleged as such, was impeachment by a conviction under MRE 609, because there was no testimony to have an inconsistency with to make MRE 801(d)(1)(A) applicable.
The transcript reflects the confusion and misunderstanding by all involved regarding our rules of evidence and the applicability of the facts to them as the defense sought to intertwine several evidentiary rules. Therefore, we afford ourselves of the opportunity to explain the proper use of our evidentiary rules regarding this type of impeachment.
The authority cited by the defense is MRE 801(d)(1)(A). Mississippi Rule of Evidence 801(d)(1)(A) states in pertinent part:
801(d) Statements Which Are Not Hearsay. A statement is not hearsay if:
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, ... .
The defense contends that this evidentiary rule makes the use of Magee's alleged false statements in previous trials about whether he had ever been convicted for a misdemeanor admissible as a `prior inconsistent statement.' MRE 801(d)(1)(A) makes a prior statement given under oath at "a" trial etc., which is inconsistent with the witness' testimony in the present trial admissible "nonhearsay". In other words, MRE 801(d)(1)(A) is not applicable until the declarant testifies at the present trial on a matter which is inconsistent with a previous sworn statement. Likewise, the rule does not in and of itself completely deal with the admissibility of the inconsistent statement but rather merely makes it "nonhearsay."; See United States v. Campbell, 684 F.2d 141, 146 fn. 7 (D.C. Cir.1982).
The judge was correct in his ruling on how a witness can be properly impeached by a prior conviction which is really the applicable rule under these facts and not MRE 801(d)(1)(A).
MRE 609 IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIME states, in relevant part:
(a) General Rule. For the purpose of attacking the credibility of a witness, the evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.
In the case sub judice, the defense sought to introduce a previous sworn statement which was allegedly false, without a conviction of perjury, for impeachment about a prior misdemeanor conviction not involving dishonesty which is inapplicable and inadmissible under MRE 609(a)(1). See Ivy v. State, 522 So.2d 740, 744 (Miss. 1988). The trial judge was correct in ruling the prior "false" statement inadmissible since it did not meet the additional requirements of MRE 609(a) and did not prohibit the defense from trying to impeach by an inconsistency that may *1165 have arisen during Troy's subsequent testimony. Although not argued at trial and thus not available for appeal preventing this Court from making any such ruling, the defense could have presumably sought to impeach Magee pursuant to MRE 608(b), but would have been limited in doing by his answer as the rule prevents the use of any extrinsic evidence to prove the specific bad act used solely for impeachment of a witness' veracity. Accordingly, we affirm the lower court on this issue.

IV. DID THE DISTRICT ATTORNEY WRONGFULLY ALLUDE TO OTHER ILLEGAL ACTS OR CONVERSATIONS AND WAS THE DEFENDANT PREJUDICED BY THIS ACTION?
The defendants' argument centers around the following direct testimony of Magee:
Q: And what did you talk to her about?
A: I told her that I'm sorry for bothering her because they was moving in and stuff, I told her that the other rocks that I had purchased from her was very powerful and I wanted to get two more 
BY MR. OTT: Object to the statement as being irrelevant, unduly prejudicial, hearsay and move to strike.
BY THE COURT: Overrule the objection.
The defendants cite Sumrall v. State, 272 So.2d 917 (Miss. 1973), as the basis for reversing on this issue. Sumrall held that it was reversible error for the jury to be presented evidence of other crimes of immorality (which) destroyed the possibility of a fair trial upon the charge in the indictment. Id. at 919. Sumrall appears applicable at first glance but is distinguishable from the case sub judice.
Sumrall resulted in a reversal because of four or five prejudicial comments made regarding other alleged crimes of the defendant which he was not charged with, as well as two statements about his living immorally with a fifteen year old girl. Id. at 917-919. The prejudicial comments were made subsequent to the court sustaining the defense's objections.
The case sub judice only involved one incident in which the witness alluded to another possible crime for which the defendants were not charged. It should also be noted that the prosecution did not deliberately ask or infer about whether the defendants had been involved in any other offenses, which is clearly distinguishable from the intentional and repeated acts in Sumrall.
The defendants point out that the trial judge was aware that crimes committed by the defendants which were not being tried could not be commented on by a witness. However, this ruling was regarding a time discrepancy in the witnesses' testimony and whether Troy had previously been to the defendants' trailer, not whether he had previously purchased additional drugs. Additionally, these discussions between counsel and the judge were done outside the presence of the jury. Therefore, the defendants were not prejudiced in any way by these particular comments.
The basis for appeal here is that the statement was so prejudicial as to deprive the defendants of their right to a fair trial. MRE 403 states that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ...". Assuming arguendo that the statements in this case were prejudicial, they were not continuously repeated to arise to the level of abuse found in Sumrall so as to warrant a reversal. Therefore, the alluding alleged here was not more prejudicial than probative, making Sumrall and MRE 403 favorably applicable to the State. The lower court's ruling will not be disturbed on this point.

V. DID THE COURT IMPROPERLY ALLOW POLICE DETECTIVE PERRY ASHLEY TO CHARACTERIZE A CONVERSATION HE HEARD OVER A BODY TRANSMITTER INSTEAD OF REQUIRING HIM TO TESTIFY ONLY AS TO WHAT WAS ACTUALLY SAID?
The defendants assign as error Detective Ashley's interpretation of a comment heard over the body transmitter by Troy during the purchase of the cocaine. The defendants allege that a proper predicate *1166 was not laid and that the testimony was extremely prejudicial. The State alleges that the defendants' issue on appeal regarding an inadequate predicate is a new issue not preserved at trial for appeal and is thus procedurally barred. We agree.
The following is the conversation complained of by the defendants:
ASSISTANT DISTRICT ATTORNEY RUSHING: When you heard the voice of Lucille Craft, do you recall the conversation between Mr. Magee and Miss Craft?
BY PERRY ASHLEY: Somewhere in the conversation he advised her that he was sorry to disturb her, that he had some `change he wanted to burn up'.
Q: And when you say `change to burn up,' do you know what that particular phrase means?
BY MR. OTT: I object to his interpretation of the language that he heard.
BY THE COURT: Well, I'll overrule the objection and let him testify. Of course, you can cross-examine him, that's fine.
Q: You may proceed, Mr. Ashley.
A: That he wanted to spend his money he had on some more cocaine.
The State alleges that Mr. Ott's objection on the grounds of `interpretation' did not amount to a preservation for appeal upon the grounds of inadequate predicate. However, the basis for the Court in its affirmance on this issue is the procedural bar.
As this Court stated in Holland v. State, 587 So.2d 848, 868, n. 18 (Miss. 1991):
Holland is procedurally barred from raising these issues because he either cites support for his contention which is different from the support he cited at the trial level or he failed to raise the issue at trial. "A trial judge can not be put in error on a matter which was not presented to him for decision." Pruett v. Thigpen, 665 F. Supp. 1254, 1262 (N.D.Miss. 1986); see Read v. State, 430 So.2d 832, 838 (Miss. 1983).
The defendants raise the grounds of improper predicate for the first time on appeal. Therefore, the Court finds that the defendants' issue was waived and is not properly before the Court. Accordingly, we affirm the trial judge on his ruling upon this issue.

CONCLUSION
The defendants have not raised any error warranting a reversal by this Court. Therefore, the lower court's rulings and the sentences imposed are affirmed.
AS TO LUCILLE CRAFT: COUNT I: CONVICTION OF UNLAWFUL SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF FIFTEEN (15) YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $15,000.00 AFFIRMED. COUNT II: CONVICTION OF CONSPIRACY TO SELL COCAINE AND SENTENCE OF TEN (10) YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $10,000.00 AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.
AS TO DONALD COWART: COUNT II: CONVICTION OF CONSPIRACY TO SELL COCAINE AND SENTENCE OF TEN (10) YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $10,000.00 AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
BANKS, J., concurs with separate written opinion joined by DAN M. LEE, P.J.
McRAE, J., joins in result only.
BANKS, Justice, concurring:
I concur with the result reached by the majority but for different reasons with respect to two evidentiary issues. I believe that the trial court erred in handling the proffered testimony concerning Magee's prior statements under oath denying a misdemeanor conviction. Unfortunately, for *1167 Craft's position here, she did not seek to introduce the evidence under the proper provision of our rules in the trial court and has not alleged error properly here. I also believe that the court erred in overruling the objection to Officer Ashley's interpretation of words used by Magee and disagree with the suggestion that an allegation of an absence of a proper predicate was not preserved. I view this error as harmless, however, in light of what the record reflects concerning the rest of the conversation between Magee and Craft.

I.
Prior to trial, the State moved in limine to prevent Craft from presenting evidence that Magee, the State's informant, who is alleged to have purchased the drugs from Craft, had been convicted of a misdemeanor. The State asserted that the misdemeanor was not admissible under M.R.E. 609 because it did not involve dishonesty or false statement. When the motion was presented, Craft responded that what she wanted to show was that Magee had lied about these convictions while testifying under oath in other proceedings. The court observed that if there was no conviction for perjury this testimony would be inadmissible. There, as here, Craft pushed for admissibility on the ground that the testimony would be evidence of a prior inconsistent statement. The court ruled that Craft would be permitted to show that Magee made an inconsistent statement with respect to facts testified to in this case. That ruling is somewhat problematic because Craft was not permitted to ask about the misdemeanor convictions. It follows that, Magee would not be put in a position of making an inconsistent statement in that regard.
That ruling is fine as far as it goes. If the misdemeanors did not involve dishonesty or false statement, Magee should not have been asked about them in the first proceeding, assuming that the inquiry was for impeachment purposes. Precluding Craft from an inquiry regarding only the conviction was proper. The problem is that the assertion that Magee lied in the other proceeding invokes another rule not explicitly discussed there or here. That rule is M.R.E. 608(b) which provides that specific instances of conduct other than conviction of crime bearing on the witness' character for truthfulness can be inquired into on cross-examination of the witness for the purpose of attacking the witness' credibility. Brent v. State, 632 So.2d 936, 942-45 (Miss. 1994). One can hardly imagine conduct bearing more directly on character for truthfulness than a prior falsehood under oath. Id.
While he did not mention the rule, counsel for Craft clearly asserted that it was the false statement that he was offering for "direct impeachment purposes." It was at that point that the trial court erroneously opined that if there was no perjury conviction it would not be admissible. Counsel pressed the argument for admission as a prior inconsistent statement. After the court finally ruled that only if an inconsistent statement was made during the course of the trial at hand would evidence of the prior statement be admissible, counsel indicated an intent to make a proffer at a later time. The record does not reflect that such a proffer was ever made.
On this appeal, Craft continues to treat the State's objection to the testimony as based on hearsay when in fact the State simply objected to the misdemeanor conviction evidence on the basis of M.R.E. 609. Craft also cites M.R.E. 611(a), but it is apparent that what is intended is M.R.E. 613(a), the rule regarding prior statements. The proper rule, M.R.E. 608, continues to elude her. As for M.R.E. 609, the basis for the State's motion, it too works, as far as it goes. If the misdemeanor conviction evidence was offered for impeachment purposes only, it should be excluded. It is not, however, offered for impeachment purposes per se. It is offered in the context of a lie about them and the lie is what is offered for impeachment purposes. It is clear that evidence of convictions, while limited when offered for impeachment purposes and inadmissable to prove that a person acted in conformity with the conduct forming the basis of the conviction, is admissible for other purposes under M.R.E. 404. Here it would have been necessary to bring out the fact that Magee had been convicted *1168 of a misdemeanor in order to present the fact that he had lied about. The convictions then were not offered to impeach per se or to prove conforming actions. Evidence of them would have been merely incidental to the impeachment evidence, the false statement under oath. Brent v. State, 632 So.2d at 943 fn. 4. In such circumstances, any undue prejudice would have to be considered under M.R.E. 403 as with any other evidence. Id. at 944.
While the trial court erred in excluding this evidence, that error does not dictate reversal for several reasons. First, Craft did not make explicit her basis for introducing the evidence in terms of the Rules of Evidence. I would not affirm on this basis alone because in my opinion the thrust of her contention should have been recognized by the court before it went off on the lack of a conviction tangent. Nevertheless, the trial Court was never asked to make a ruling under the rule by either number or description. Additionally, neither is this court directed to the rule. We have eschewed plain error unless it was clear that substantial rights have been affected. Harris v. State, 642 So.2d 1325, 1328 (Miss. 1994); Johnson v. Fargo, 604 So.2d 306, 311 (Miss. 1992). Here we are talking about further impeachment evidence of a witness who was fairly well impeached by other testimony and allusions in the record. The gravamen of the offense, however, was witnessed, albeit electronically by a policeman witness who was not impeached.

II.
As to Officer Ashley's testimony interpreting the phrase "change to burn up," the predicate in question is not that establishing the officer's ability to recognize Craft's voice but rather that required to put him in a position to interpret the words used. Other than the fact that he had been a police officer for fourteen years, there is nothing in the record that speaks to his ability to express such a conclusion. Ashley had not been offered or qualified as an expert. No inquiry was made as to the basis for his conclusion as to what was intended by the words spoken. The objection should have been sustained. This error is harmless, however, in light of the fact that later in the conversation between Craft and Magee there were explicit references to cocaine which established the context of the conversation without the necessity of interpretation.
DAN M. LEE, P.J., joins this opinion.
McRAE, J., joins in result only.