821 So.2d 853 (2002)
Charles CARNEY a/k/a Cool Charles, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01638-COA.
Court of Appeals of Mississippi.
January 22, 2002.
Rehearing Denied April 2, 2002.
Certiorari Denied July 18, 2002.
*854 Glenn Louis White, Petal, Attorney for Appellant.
Office of the Attorney General, by Deirdre McCrory, Attorney for Appellee.
*855 Before McMILLIN, C.J., LEE, and MYERS, JJ.
LEE, J., for the Court.
¶ 1. Charles Carney a/k/a Cool Charles was convicted of the sale or transfer of a controlled substance within 1,500 feet of a church as a habitual offender. Since the sale occurred within 1,500 feet of a church and Carney was a habitual offender, the trial judge sentenced him to the maximum sentence of 120 years. Feeling aggrieved, Carney has filed a timely appeal and asserts the following: (1) whether the trial judge improperly allowed the admission of evidence regarding prior bad acts without performing a balancing test and granting a limiting instruction, (2) whether the trial judge abused his discretion when he denied Carney's motion for directed verdict, (3) whether the trial judge's imposition of the 120 year sentence violated Carney's Eighth Amendment right. Finding these issues without merit, we affirm the decision of the trial judge.

FACTS
¶ 2. On the day in question, Officer Robert Cooper was working undercover with the Pearl River Basin Narcotics Task Force. Cooper met with officers to discuss the purchasing of drugs in Marion County. At this meeting, Officer Cooper obtained a twenty dollar bill to purchase drugs. Before Officer Cooper left the meeting the serial number from the twenty dollar bill he had been given was recorded, and he was given a hand held, high-band radio.
¶ 3. Officer Cooper proceeded to Short Owens Road and while traveling on this road a man later identified as Michael Stovall "hollered" and waved Cooper back. Stovall was standing in the roadway near Carney's house. Cooper drove back to where Stovall was standing.
¶ 4. Stovall approached the window of the vehicle and asked Cooper what he wanted. Cooper responded that he wanted a "twenty." This meant he wanted a twenty dollar rock of crack cocaine. Cooper testified that Stovall opened a matchbox and handed him a rock and then he gave Stovall the twenty dollar bill. Once in possession of the cocaine Cooper drove away.
¶ 5. As Cooper was driving away he radioed other officers involved in the drug operation and provided a description of Stovall. Cooper stated that as he drove away he saw officers approach Carney's residence and witnessed Stovall going inside of Carney's house. Cooper guessed that it took the officers approximately twenty to thirty seconds to arrive at Carney's residence. Thereafter, Cooper parked his vehicle and rode back to Carney's residence.
¶ 6. Cooper stated that the drug transaction took place near two churches. Greater Faith Ministry Church was 812 feet from where the sale occurred, and Greater Temple Church of Christ was 119 feet away from the location of the sale.
¶ 7. As a result of the search performed on Stovall, a homemade bong was found; however, no drugs or money were found on Stovall. Eventually, officers asked Carney for permission to search his residence.
¶ 8. Cooper testified that Carney gave verbal permission for the search to be conducted; nonetheless, before the search occurred Cooper discovered the twenty dollar bill he had given to Stovall to purchase the cocaine balled up tightly in Carney's fist. Cooper said that once he took the money out of Carney's hand, Carney told him that he had gotten the money as change for groceries he had purchased at the Piggly Wiggly earlier that day.
*856 ¶ 9. No cocaine was recovered.
¶ 10. Julie Nibert, one of the officers on patrol, who aided in arresting Stovall, stated that Stovall was standing in Carney's doorway at the time she and other officers approached Carney's house. Nibert confirmed that a bong was found on Stovall; however, no drugs were recovered. Nibert estimated that less than a minute had passed from the time she saw Stovall in the door until she was removing Stovall from the doorway.
¶ 11. Stovall testified that on the day in question he was at Carney's house. Stovall stated that typically before he went out he would go by Carney's house and Carney would give him drugs to sell. However, on the day in question Stovall did not stay at Carney's to sell the drugs he had received. Instead, Stovall went elsewhere and returned later that night to give Carney the money for the drugs he had sold. While Stovall was there to give Carney the money from the sale of the drugs a truck passed Carney's house. Carney essentially asked Stovall if he could "catch" the truck and he did. This resulted in the sale of crack cocaine Stovall made to Officer Cooper.
¶ 12. Stovall explained that once he received the twenty dollar bill from Cooper he gave it to Carney, because that was what he always did. Stovall contended that when he gave Carney the twenty dollar bill he also gave Carney cocaine. Stovall explained that he and Carney were standing in the kitchen and about ten minutes later the police arrived. Stovall stated that he went to the door carrying a pill bottle containing cocaine; however, upon opening the door he saw the police officer. Thereafter, he shut the door. Stovall then threw the pill bottle behind him to Carney and re-opened the door and let the officer take him outside.
¶ 13. On cross-examination, counsel for Carney questioned Stovall about whether he had informed his girlfriend Linda Ellis that he had gotten the cocaine from a Jeffery Brown. Stovall denied making this statement, and contended that Linda Ellis was there when Carney gave him the drugs.
¶ 14. Beverly Hall testified on behalf of Carney. Hall asserted that Stovall did not sell drugs for Carney. Hall explained that on the day in question, Stovall had arrived at the house asking for change for a twenty dollar bill. Hall stated that she took the twenty dollar bill and placed it on the kitchen table where Carney was eating. However, Stovall changed his mind and told Carney to keep the twenty dollar bill because he might need Carney to bail him out of jail later due to potential domestic problems with Linda Ellis.
¶ 15. Linda Ellis testified that Stovall had told her that he received the cocaine from Jeffery Brown. However, she did not see Jeffery Brown give Stovall the drugs. Additionally, Ellis denied that Stovall was selling drugs for Carney. However, Ellis stated that she had observed Stovall go into Carney's apartment twice that day.
¶ 16. Ricky Fulgham testified that he was in jail on a trespassing charge at the time it was rumored that Stovall and Carney had been arrested. Fulgham contended that later that same night Stovall was put in his cell block and was talking about how he had sold drugs to an undercover cop and had given the twenty dollar bill to Beverly Hall who was residing with Carney at the time.
¶ 17. Carney testified that on the day in question he did not have the opportunity to see Stovall until between 11:30 and 12:00 p.m. Carney repeated the version of events told by Hall. Carney also denied that he had given any controlled substances *857 to Stovall, or that he was even in possession of any controlled substances.

DISCUSSION

I. WHETHER THE TRIAL JUDGE IMPROPERLY ALLOWED THE ADMISSION OF EVIDENCE REGARDING PRIOR BAD ACTS WITHOUT PERFORMING A BALANCING TEST AND GRANTING A LIMITING INSTRUCTION.
¶ 18. Carney argues that the trial court improperly allowed Stovall to testify regarding a prior drug transaction. Carney contests the admission of the statement regarding Stovall owing Carney money for drugs and that normally before Stovall went out Carney gave him drugs to sell. Carney argues that allowing this testimony implied that Stovall and Carney had been involved in other unlawful business transactions, and that the Mississippi Rules of Evidence Rules 403 and 404 balancing test should have been conducted by the trial judge.
¶ 19. In particular, Carney complains of the following responses from Stovall:
Q: And I'll ask you again, what were you doing there that day?
A: Well, normally before I go out he have me drugs to sell. And that particular day
MR. WHITE: To which we'd object, Your Honor.
THE COURT: I'll overrule the objection.
BY MR. MILLER: And that particular day what?
A: That particular day I decided not to stay there, which is normally what I do. So I had went elsewhere.
Q: Okay. And what happened then?
A: I came back later on that evening. Well, it was after dark. And I went and I give the money for what I had sold. And a truck passed by and he said, "You want to catch that." I said, "I might as well," so I went and caught it.
¶ 20. The State contends the questions asked by the State were not designed to elicit testimony of other offenses on the part of Carney. Therefore, the trial judge was correct in determining that the questions were proper and the objections should have been overruled. Additionally, the State asserts that the testimony was proper because it told a complete story of the crime.
¶ 21. Support for the State's argument is found in Craft v. State, 656 So.2d 1156, 1165 (Miss.1995). In Craft, the Mississippi Supreme Court had to decide whether the district attorney had wrongfully alluded to other illegal acts which prejudiced Craft. The contested testimony in Craft was as follows:
Q: And what did you talk to her about?
A: I told her that I'm sorry for bothering her because they was moving in and stuff, I told her that the other rocks that I had purchased from her was very powerful and I wanted to get two more
BY MR. OTT: Object to the statement as being irrelevant, unduly prejudicial, hearsay and move to strike.
BY THE COURT: Overrule the objection.
Id. The Mississippi Supreme Court noted that the above questioning only "involved one incident in which the witness alluded to another possible crime for which the defendants were not charged." Id. The court also noted that the district attorney's questions were not deliberately asked or meant to infer that the defendants had been involved in any other offenses. Id. The same can be said in the case at bar.
¶ 22. The questions asked of Stovall by the prosecution were not intended to elicit *858 a response of prior illegal conduct. Additionally, there was no testimony regarding any prior charges or jail time. Furthermore, the trial judge granted jury instruction seven which stated: "The Court instructs the Jury that the testimony of the alleged accomplice [i.e., Stovall] should be weighed with great care and caution and the jury may disbelieve his or her testimony altogether if they believe it untrue, the Jury being the sole judge of the credibility of the witnesses." Therefore, we find no error, and this issue is without merit.

II. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN HE DENIED CARNEY'S MOTION FOR A DIRECTED VERDICT.
¶ 23. Carney contends that the evidence presented by the State was not sufficient to support the verdict of guilty of the sale or transfer of a controlled substance within 1500 feet of a church. Carney seems to base his argument on the contention that Stovall's testimony was improbable, self-contradictory, and substantially impeached and was therefore, insufficient. This argument is directed at the overwhelming weight of the evidence instead of the sufficiency.
¶ 24. The State contends just the opposite.
¶ 25. In the case at bar, Carney not only made an oral motion for a directed verdict during the trial, but he also filed a motion for judgment notwithstanding the verdict. A judgment notwithstanding the verdict challenges the sufficiency of the evidence. Sherrod v. State, 755 So.2d 569, 571(¶ 7) (Miss.Ct.App.2000). To test the sufficiency of the evidence,
we must, with respect to each element of the offense, consider all of the evidence not just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Wetz v. State, 503 So.2d 803, 808 (Miss. 1987) (citations omitted).
¶ 26. The Mississippi Supreme Court has held that "a conviction may be supported by the testimony of an accomplice, even when it is uncorroborated." Winters v. State, 449 So.2d 766, 771 (Miss. 1984). However, there was some corroborating evidence.
¶ 27. Stovall testified that he had given Carney the twenty dollar bill for drugs he had sold for Carney. Officer Cooper testified that he found the twenty dollar bill used in the purchase in Carney's hand, and that originally, Carney had stated a falsehood because he claimed he had received the twenty dollar bill earlier that day at the Piggly Wiggly. Additionally, Officer Cooper explained that the sale occurred not only within 1,500 feet of a church, but it occurred within 1,500 feet of two churches. Therefore, the State presented sufficient evidence for a reasonable and fair-minded juror to find Carney guilty. The trial judge was required to leave the determination of guilt or innocence to the jury. The next contention asserted by Carney deals with the denial of the motion for a new trial and regards the credibility of Stovall's testimony.
¶ 28. Carney disputes the credibility of Stovall's testimony. Carney attacks *859 such facts as Stovall testifying that the drugs were in a pill bottle while Officer Cooper testified the drugs were in a matchbox, as well as Stovall's and the officer's statements regarding the lapse of time that occurred while Stovall was in Carney's house. Since Carney is attacking the credibility of Stovall we look to the standard for when a new trial will be granted.
¶ 29. In Benson v. State, 551 So.2d 188, 193 (Miss.1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
A motion for a new trial is within the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 397 (Miss.1985). Any discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). This Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id. Therefore, it was within the purview of the jury to decide the weight and worth of Stovall's testimony. Upon reviewing all of the evidence we find that the trial court did not abuse its discretion in denying the motion for new trial. Accordingly, this issue is without merit.

III. WHETHER THE TRIAL JUDGE'S IMPOSITION OF THE 120 YEAR SENTENCE VIOLATED CARNEY'S EIGHTH AMENDMENT RIGHT.
¶ 30. Carney's brief delineates more arguments in issue three than stated in this opinion; however, Carney only presents actual argument regarding the 120 year sentence imposed by the trial judge. Therefore, we too will only address the sentencing issue. See Reaves v. State, 749 So.2d 295, 297(¶ 10) (Miss.Ct.App.1999).
¶ 31. Carney argues that the 120 year sentence imposed on him is excessive and constitutes cruel and unusual punishment. Carney concedes that pursuant to such case law as Wallace v. State, "that the sentence will usually not be disturbed if it does not exceed the maximum period allowed by statute." Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). However, Carney wishes to attack his sentence on Eighth Amendment grounds.
¶ 32. In White, the supreme court discussed Miss.Code Ann. § 41-29-142 (enhanced penalties for the sale of a controlled substance within 1,500 feet of a church) and whether the maximum penalty of sixty years, for a first-time offender could be considered excessive and cruel and unusual punishment. White v. State, 742 So.2d 1126, 1135 (¶¶ 33-48) (Miss. 1999). The court in White reaffirmed that generally a sentence that does not exceed the maximum period under the statute will not be disturbed on appeal. Id. at 1135(¶ 35). However, if a sentence may be classified as "grossly disproportionate" to the charge it may be attacked under the Eighth Amendment. Id. If a comparison of the sentence imposed for the crime the individual is convicted leads to an inference of gross disproportionality the Solem three-prong analysis is applied. Id. at *860 1135 (¶ 37); see Hoops v. State, 681 So.2d 521, 538 (Miss.1996).
¶ 33. Carney's sentence is the maximum penalty under the law; however, because of public policy, the legislature's sentencing authority, and the trial judge's failure to surpass sentencing guidelines, it is not grossly disproportional and does not trigger further discussion of the Solem test. See Stromas v. State, 618 So.2d 116, 123 (Miss.1993).[1]
¶ 34. The Mississippi Supreme Court acknowledged in White, that the "Legislature wisely provided ... a broad range of sentences to allow trial judges, using their discretion, to issue appropriate sentences in each individual case. It is incumbent upon those trial judges to use this power wisely." White, 742 So.2d at 1137(¶ 45). The Legislature has provided an array of possible sentences for those convicted of sale of cocaine. Id. at 1137(¶ 48). "[T]he public has expressed grave concern over the growing drug problems, and, it was the Legislature's prerogative, and not that of this [c]ourt, to set the length of sentences." Id. at 1136(¶ 39).
¶ 35. Carney argues that like Davis v. State, the sentence is obviously not proportionate to the offense committed. Davis v. State, 724 So.2d 342, 344-45 (Miss.1998).
¶ 36. In Davis, a mother of a small child was sentenced to sixty years in prison for the sale of two rocks of crack cocaine within 700 feet of a church. Id. at 344(¶ 8). Under this sentence she would not be eligible for parole until she was seventy-six years old. Id. The Mississippi Supreme Court reviewed the record and concluded that there was a lack of information in the record to explain the severity of the sentence and it should be remanded. Id. at (¶ 9).
¶ 37. There was no information regarding how many prior offenses Davis had committed or the history or nature or punishment for the offenses. Id. Additionally, Davis was not tried as a repeat offender. Id. Furthermore, at the time of sentencing, the trial judge gave no explanation, and the Mississippi Supreme Court did not have the benefit of a pre-sentence investigation. Id. at (¶ 10). Based on the facts in the case, and the lack of information justifying such a lengthy sentence, the Mississippi Supreme Court determined that it could not conclude whether the trial judge abused his discretion; therefore, the court reversed and remanded for re-sentencing. Id. at (¶ 17).
¶ 38. Unlike the facts in Davis, Carney was tried as a habitual offender. Additionally, the trial judge was given the benefit of what prior offenses were committed by Carney. The record discloses that Carney's prior convictions also dealt with the possession of controlled substances.
¶ 39. The jury found Carney guilty of the sale or transfer of a controlled substance within 1,500 feet of a church as a habitual offender. The 120 year sentence imposed on Carney by the trial judge did not exceed the punishment allowed under Miss.Code Ann. § 41-29-139 (Supp.2000), which was enhanced by § 41-29-142 (Rev. 1993) and then enhanced again by § 99-19-81 (Rev.2000). The trial judge specifically discussed the sentencing guidelines under each prong of his offense and properly enhanced Carney's penalties with each prong. Finding no abuse of discretion, this issue is without merit.
*861 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF THE SALE OR TRANSFER OF A CONTROLLED SUBSTANCE WITHIN 1,500 FEET OF A CHURCH, SECOND AND SUBSEQUENT OFFENDER AND HABITUAL OFFENDER, AND SENTENCE OF 120 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT A SEPARATE WRITTEN OPINION.
NOTES
[1] It is noted, that while Carney argues for the application of the Solem factors in the case at bar, he has only made a general argument regarding the proportionality of the sentence. Carney did not present any specific evidence to meet the criteria.