## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-KA-01239-SCT

*EARNEST E. WHITE a/k/a EARNEST EDWARD WHITE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/97 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. MILLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | ALEXANDER MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, VACATED IN PART, AND REMANDED - 6/24/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/15/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Earnest E. White was indicted for unlawful sale of cocaine within 1,500 feet of a church, in violation of Miss. Code Ann. §§ 41-29-139 and -142 (1993) for his sale of $40 worth of crack cocaine to a confidential informant. The jury returned a verdict of guilty of the sale of cocaine. He waived a jury trial on the enhancement provision. After hearing testimony, the Honorable Lamar Pickard found the sale occurred within 1,500 feet of a church and imposed the maximum sentence of sixty years in the custody of the Mississippi Department of Corrections. White timely appealed, presenting five assignments of error:[1]

> **I. THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION PURSUANT TO THE INDICTMENT AND RELEVANT LAW. THE LOWER COURT ERRED IN NOT GRANTING A JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO M.R.C.P. 50(B).**

**II. THE LOWER COURT ERRED IN NOT GRANTING A NEW TRIAL BASED ON JURY MISCONDUCT AND FAILURE TO RELEASE THE JURY AT A REASONABLE TIME.**

**III. THE LOWER COURT ERRED BY ALLOWING THE AUDIO TAPE AND ILLEGAL SUBSTANCE INTO EVIDENCE.**

**IV. THE TRIAL COURT ERRED IN ITS RULING THAT AN OPINION AS TO THE TRUTH AND VERACITY OF THE CONFIDENTIAL INFORMANT IS NOT ADMISSIBLE.**

**V. THE LOWER COURT ACTED IMPROPERLY BY SENTENCING APPELLANT TO 60 YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.**

## STATEMENT OF THE FACTS

¶2. On December 21, 1996, around 6:30 p.m., Levon Turner ("Turner") purchased $40 worth of crack cocaine from Earnest White ("White") in Hazlehurst, Mississippi. Turner was a confidential informant working with law enforcement officers Ron Crew ("Crew") and John Whitaker ("Whitaker"). Crew and Whitaker monitored the transaction from a remote location by way of an audio transmitter worn by Turner.

¶3. Turner waved White over as he drove past and got in the car with White. Crew and Whitaker left their hidden location behind a church and passed the vehicle with Turner and White inside. Both officers testified, despite the darkness, they were able to identify both Turner and White as being inside the vehicle. They also stated they heard the transaction take place over the receiver in their car. Crew and Whitaker picked up Turner immediately after the buy. A search of Turner revealed crack cocaine.[2] Leah Heath, an analyst with the Mississippi Crime Lab, testified the substance found on Turner was cocaine.

## DISCUSSION OF LAW

**I. THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION PURSUANT TO THE INDICTMENT AND RELEVANT LAW. THE LOWER COURT ERRED IN NOT GRANTING A JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO M.R.C.P. 50(B).**

¶4. A motion for a judgment notwithstanding the verdict challenges the sufficiency of the evidence supporting the jury's verdict of guilty. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). On review, this Court views the evidence in a light most favorable to the State and resolves all favorable inferences in favor of the prosecution. With respect to an element of the crime charged, only where the evidence is such that reasonable and fair-minded jurors could return only a verdict of not guilty are we authorized to reverse. *Jones v. State*, 669 So. 2d 1383, 1388 (Miss. 1995) (*citing McClain*, 625 So. 2d at 778).

¶5. Under this standard, there is substantial evidence from which reasonable and fairminded jurors could have found White guilty of the sale of cocaine:

* Crew and Whitaker testified Turner did not have any drugs on his person before the transaction with White occurred. The officers were able to identify Turner and White, whom they had seen in photographs,

in White's vehicle as it drove past them. The buy was monitored via an audio transmitter worn by Turner. A substance, which subsequently testified positive as cocaine, was found on Turner immediately after the buy. Both officers identified White as the person they observed in the vehicle with Turner.

\* Turner testified the person who sold him cocaine was White. Turner had seen and met White on previous occasions. He stated Danny White, White's cousin, was not the person who sold him cocaine on December 21, 1996.

¶6. White also argues the verdict is against the overwhelming weight of the evidence. In his brief, White points to numerous facts requiring reversal. At trial, White argued it would have been impossible for Crew and Whitaker to identify White as the two cars passed on the street. Additionally, he presented several alibi witnesses who stated White was with them when the crime occurred. Also placed before the jury was the fact that Crew did not include in his report the fact that he left his surveillance position. Crew also did not record that White was the person he saw in the car with Turner. Presumably, White is asking this Court to overturn his conviction because the jury chose to believe the State's witnesses rather than those presented on his behalf.

¶7. It is the sole province of the jury to resolve any conflicts arising from the testimony presented at trial. *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). White is not entitled to a new trial unless to affirm the verdict of guilty would be to "sanction an unconscionable injustice." *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997); *Benson v. State*, 551 So. 2d 188, 193 (Miss. 1989) (*citing McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987)). The State and White were allowed to present their theories of the case to the jury. All of White's allegations go to the weight and credibility of the evidence. It is evident the jury resolved any conflicts in the evidence in favor of the State.

¶8. Finally, White argues Turner's testimony, as the sole eyewitness, was so unreliable as to require reversal of his conviction. Turner admitted he was a cocaine user and had volunteered to be a confidential informant. It was shown Turner had been convicted of food stamp fraud. In fact, White was permitted to cross-examine Turner concerning a variety of unproven allegations,[3] and he was allowed to present additional witnesses who testified Turner was untrustworthy.

¶9. White cites *Pipkins v. State*, 592 So. 2d 947 (Miss. 1991), as support for his proposition that the unreliability of Turner's testimony mandates that his conviction be overturned. However, *Pipkins* is distinguishable from the case at bar. There, the Court was confronted with a search warrant which was based on a confidential informant's statements to police. The Court reversed Pipkins's conviction because the "reliable information" contained in the warrant had never been relied upon before, thus probable cause did not exist. *Id*. at 951. Without probable cause the evidence discovered as a result of the execution of the warrant was inadmissible. *Id*.

¶10. Once again, the evidence attacking Turner's credibility and trustworthiness was placed before jury. Despite Turner's shortcomings, the jury weighed the evidence and found Turner's testimony, coupled with that of the officer, outweighed the evidence presented by White. This assignment is without merit.

### II. THE LOWER COURT ERRED IN NOT GRANTING A NEW TRIAL BASED ON JURY MISCONDUCT AND FAILURE TO RELEASE THE JURY AT A REASONABLE TIME.

¶11. There are actually two separate issues raised under issue II. The first concerns comments made by the jurors before they retired to deliberate. The second amounts to an argument the trial judge abused his discretion by keeping the jury late. We examine the latter first.

¶12. The record indicates the jurors retired at 9:10 p.m. and returned with their verdict at 9:30 p.m. White also alleges the jury was "fed late." In essence, he argues all of the above resulted in a guilty verdict only because the jury was tired and ready to go home.

¶13. Trial judges ordinarily have broad discretion in deciding when to begin and stop trials on any given day. *Hooker v. State*, 716 So. 2d 1104, 1113 (Miss. 1998) (*quoting Dye v. State*, 498 So. 2d 343, 344 (Miss. 1986)). As there is no bright line rule as to when a trial judge should grant a continuance or recess, the peculiar facts of each case are the proper focal point of an analysis. *Id*.

¶14. What White fails to mention is that the trial did not begin until at least 1:00 p.m. There is no indication that either party or the jurors requested a recess or a continuance. Additionally, the record reveals the jurors were served dinner at some point. Under the circumstances, there was no abuse of discretion by the trial judge in continuing with the trial.

¶15. The second part of the issue involves White's allegation the jury engaged in premature deliberations. Alternate juror Ruby Felton[4] executed a sworn affidavit which states in relevant part:

> 2. . . . heard male juror said during the break that the State didn't have enough evidence.
>
> 3. Johnny Roberson said during the last break that Earnest White was not guilty.
>
> 4. The [illegible] age white-head woman said didn't have enough evidence.
>
> 5. All the jurors were saying they were tired, they were ready to go home and it was after 9:00 p.m., we didn't get anything to eat until late.

In support of his argument, Whites cites *Holland v. State*, 587 So. 2d 848, 872-74 (Miss. 1991).

¶16. The *Holland* jury returned a verdict of guilty of capital murder. *Id*. at 872. After conclusion of the guilt phase, but before the beginning of the sentencing phase, the trial judge excused the jury while he and the attorneys discussed some preliminary matters. *Id*. While the judge attorneys were engaged in discussion, the jury sent a note saying, "We the jury, sentence Gerald James Holland to death." *Id*. The trial judge issued a corrective instruction and the sentencing phase commenced. *Id*. at 873. The jury then deliberated for over two hours before returning a sentence of death. *Id*.

¶17. This Court reversed, finding the premature deliberations denied the defendant the right to a fair hearing during the sentencing phase. *Id.* at 874. Had the trial judge questioned the jurors on their ability to remain impartial, the majority noted the result may have been different. *Id*. The implication from *Holland* is the trial judge's corrective instruction to "refrain from further deliberation" was inadequate. *Id*.

¶18. A criminal defendant is guaranteed the right to a trial by an impartial jury. *Id*. at 873 (*citing Dunaway v. Louisiana*, 391 U.S. 145 (1968)). Jurors must not "discuss a case among themselves until all the evidence has been presented, counsel have made final arguments, and the case has been submitted to them after final instructions by the trial court." *Holland*, 587 So. 2d at 873 (*quoting State v. Washington*, 438

A.2d 1144, 1147 (Conn. 1980) (citing several treatises)). The jury's discussion of the case before submission constitutes reversible error in almost every instance. *Holland*, 587 So. 2d at 873 (*citing Washington*, 438 A.2d at 1148).

¶19. *Holland* is distinguishable from the case at bar. Unlike *Holland*, the jury here never gave the court an indication it had considered the guilt or innocence of the defendant before retiring to deliberate. Even accepting Felton's affidavit as true, there is still insufficient evidence to conclude White was denied a fair trial by an impartial jury. The statements contained in the affidavit indicate the jury was predetermined to find White not guilty, rather than convict him. The trial judge, on several occasions, instructed the jury not to discuss the case with anyone else or among themselves. Moreover, the court instructed the jury to decide the case based on the evidence presented at trial. White has failed to demonstrate how he was denied a fair trial. As such, both of his arguments within this issue are without merit.

### III. THE TRIAL COURT ERRED BY ALLOWING THE AUDIO TAPE AND ILLEGAL SUBSTANCE INTO EVIDENCE.

¶20. White argues the State failed to meet the requirements of the seven-factor test enunciated in *Sparks v. State*, 412 So. 2d 754 (Miss. 1982). This seven-factor test has been supplanted by the Mississippi Rules of Evidence and is no longer applicable to the admission of tape recordings. *See Stromas v. State*, 618 So. 2d 116, 118-19 (Miss. 1993). Thus, this Court looks to M.R.E. 401 and 901 to determine if the tape recording was properly authenticated and identified by the State.

¶21. The State's evidence showed Turner was wearing a body wire during the transaction. Crew and Whitaker monitored the transaction from a remote location. Crew explained how the tape was made; how the tape was preserved; and, how he had reviewed the tape and found it to be in the same condition as when it was made. Crew also identified the voices on the tape and provided an account of the "chain of custody" concerning the tape. Admissibility of evidence is within the sound discretion of the trial judge. *See generally Stromas*, 618 So. 2d at 120. The trial judge did not abuse his discretion by admitting the tape into evidence.

¶22. With respect to the illegal substance, White objected to its admission asserting a chain of custody had not been established. On appeal, White submits the cocaine should not have been introduced into evidence because: 1) Turner was an admitted cocaine user; 2) Crew had never before relied upon information supplied by Turner; 3) neither officer saw the cocaine change hands; and, 4) George Turner, Levon Turner's brother, testified Turner had a reputation for not telling the truth.[5] White also alleges Turner, because he was a cocaine user, could have given the officers cocaine not purchased during the controlled buy.

¶23. Many of White's arguments pertain to the credibility of the witnesses and the evidence. These arguments were questions properly decided by the jury during trial. Additionally, White's claims surrounding the sufficiency of the evidence were addressed *supra*, and found to be without merit. The evidence presented showed Crew and Whitaker searched Turner before the buy. White picked up Turner at 6:45 p.m. and dropped him off at 6:48 p.m. After the buy, the officers found cocaine on Turner's person. The evidence was duly tagged, bagged and initialed by Crew, Whitaker and Turner. Crew maintained possession of the cocaine until he took it to the state crime lab. There it was placed in the vault until it was tested, and, thereafter it was returned to the vault where it remained until it was returned to the Mississippi Bureau of Narcotics. Crew and Whitaker testified the evidence bag produced at trial contained their initials

and it was in substantially the same condition. Heath also testified the bag produced at trial contained the Mississippi Crime Lab case number, the exhibit number, her initials and the date she sealed it.

¶24. "Should a chain of custody objection arise, the trial court should inquire whether there is any indication or reasonable inference of probable tampering with or substitution of the evidence." *Wilson v. State*, 574 So. 2d 1324, 1335 (Miss. 1990). Whether a chain of custody has been properly established is left to the discretion of the trial court. *Nalls v. State*, 651 So. 2d 1074, 1077 (Miss. 1995); *Wells v. State*, 604 So. 2d 271, 277 (Miss. 1992). Based upon the facts of this case, this Court finds the cocaine has an unbroken chain of custody and was therefore admissible.

### IV. THE TRIAL COURT ERRED IN ITS RULING THAT AN OPINION AS TO THE TRUTH AND VERACITY OF THE CONFIDENTIAL INFORMANT IS NOT ADMISSIBLE.

¶25. White asserts Carlos Green ("Green") should have been allowed to "testify as to the poor reputation for truthfulness" of Turner, and, Turner's brother, George Turner ("George"), should have been permitted to give his opinion as to his "knowledge regarding the veracity in the community of Levon Turner."

¶26. Two things are apparent from the record. First, Green's testimony was never offered by White. Second, George was permitted to give his opinion concerning Turner's propensity, or lack thereof, for truthfulness. Thus, White's argument concerning Green's testimony is waived because he failed to raise the argument at trial. *Ballenger v. State*, 667 So. 2d 1242, 1259 (Miss. 1995); *Foster v. State*, 639 So. 2d 1263, 1270 (Miss. 1994); *Mitchell v. State*, 609 So. 2d 416, 422 (Miss. 1992). Alternatively, White's arguments are without merit.

¶27. White never offered Green as a witness during trial. Rather, he attempted to cross-examine Turner about certain events involving Green. From the record, it appears White attempted to cross-examine Turner about an instance when Turner, working as a confidential informant, allegedly bought cocaine from Green. The State objected to the relevance of this testimony and stated the decision to drop the charges against Green was the decision of the district attorney's office and had nothing to do with Turner. The trial judge sustained the State's objection.

¶28. Later, White made a proffer as to what he would ask Turner concerning the alleged drug buy from Green. The essence of the proffer was that Turner told police officers that he had purchased drugs from Green when, in fact, the charges were later dropped. The State responded that the decision to drop the charges did not involve Turner's credibility and that Turner had never told police he purchased drugs from Green. The State asserted Turner bought drugs from a Joaquim Miller after being told how to get there by Green. The trial judge found White's proffered testimony inadmissible.

¶29. Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs. *Parker v. State*, 606 So. 2d 1132, 1137-38 (Miss. 1992).

¶30. Turner stated he did not know the charges against Green had been dropped. White offered no proof the charges were dropped as a result of Turner's credibility. The procedural bar aside, this assignment fails

on the merits.

¶31. Likewise, White's complaints surrounding George's testimony are without merit. The record reveals, and White admits in his motion for j.n.o.v., that George was allowed to offer his opinion as to Turner's proclivity for truthfulness. Thus, the issue is moot and merits no further discussion.

## V. THE LOWER COURT ACTED IMPROPERLY BY SENTENCING APPELLANT TO 60 YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.

¶32. In addition to arguing his sixty-year sentence is excessive and constitutes cruel and unusual punishment, White asserts the evidence was insufficient to find he sold drugs within 1,500 feet of a church. White waived a trial by jury on the enhancement provision, and Judge Pickard found the sale occurred within 1, 500 feet of a church. The record supports this conclusion, as Crew and Whitaker both testified the farthest the car could have been from the church was 1,015 feet. Each officer testified to the various measurements taken. White's only argument is that because the officers could not see exactly where the transaction took place, they cannot state conclusively the sale took place within 1,500 feet of the church. Both Crew and Whitaker saw the point at which White's car turned around. This point, which represents the farthest possible distance from the church the car could ever have been, was measured at 1,015 feet. This portion of the assignment is without merit.

¶33. Next, White asserts his sentence of sixty years is extremely disproportionate to the crime committed, and, in effect, amounts to a life sentence because he was thirty-four at the time of sentencing. He asserts the twelve-year sentence offered by the State as a plea bargain is an appropriate sentence for this offense.

¶34. Upon conviction for the sale of cocaine, a person may be sentenced to "not more than 30 years . . ." Miss. Code Ann. § 41-29-139(b)(1) (1993). Mississippi law provides a sentence for sale of cocaine may be enhanced under one of four enhancement statutes:

§ 41-29-142 (1993) (providing for discretionary sentencing of up to twice that authorized for sale of controlled substances within certain distances of schools, churches and other public buildings and locations);

§ 41-29-147 ( 1993) (providing for discretionary sentencing to term and/or fine of up to twice that authorized for second or subsequent drug conviction);

§ 99-19-81 (1994) (providing for mandatory maximum sentence without parole or probation for offenders who have been convicted twice previously of any felony or federal crime and who have been sentenced to separate terms of one year or more); and,

§ 99-18-83 (1994) (providing for mandatory life sentence without parole or probation for offenders convicted twice previously of any felony or federal crime who have been sentenced to separate terms of one year or more where any one of such felonies was a crime of violence).

In the present case, following the terms of § 41-29-142 (sales close to schools, churches, etc.), Judge Pickard doubled White's thirty-year sentence, given under § 41-29-139(b)(1), to sixty years.

¶35. As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992). However, a sentence that is

"grossly disproportionate" to the crime committed is subject to attack on Eighth Amendment grounds. *Id*.

¶36. The elements for evaluating proportionality are:

(1) The gravity of the offense and the harshness of the penalty;

(2) Comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; and

(3) Comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case.

*Solem v. Helm*, 463 U.S. 277, 292 (1983). This Court has adopted the test in numerous instances. *See Stromas*, 618 So. 2d at 122-23 (Miss. 1993); *Wallace*, 607 So. 2d at 1188; *Fleming v. State*, 604 So. 2d 280, 302-03 (Miss. 1992); *Jones v. State*, 523 So. 2d 957, 961 (Miss. 1988); *Clowers v. State*, 522 So. 2d 762, 764 (Miss. 1988); *Presley v. State*, 474 So. 2d 612, 618-19 (Miss. 1985).

¶37. When a "threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality'" the proportionality analysis of *Solem* is used. *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996) (*quoting Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996)). One seeking to prove a sentence violative of the Eighth Amendment carries a heavy burden. See *Stromas*, 618 So. 2d at 123. Although White's sentence is severe, the *Solem* proportionality analysis is not implicated in this case. *See id*.

¶38. The State argues *Stromas* is analogous to the case at bar. Stromas was convicted of a single sale of a small amount of cocaine and sentenced to the maximum penalty of thirty years for his crime. *Stromas*, 618 So. 2d at 123. Under the subsequent offender statute, Stromas' penalty was doubled to sixty years. *Id*. Like White, Stromas received the maximum number of years to serve, but he received less than the maximum total penalty since no fine was imposed. *Id*. Unlike *Stromas*, who had a prior conviction for possession of marijuana, *id.*, White has no prior convictions for drug-related offenses.

¶39. In *Stromas* we noted § 41-29-139(b)(1) was very broad in its application. The statute applies to the sale of *any* amount of cocaine, no matter how small. Miss. Code Ann. § 41-29-139(b)(1) (1993). The Court went on to point out the sentence was severe, but it was not "grossly disproportionate" to the crime committed. *Stromas*, 618 So. 2d at 123. The Court recognized the public had expressed grave concern over the growing drug problems, and, it was the Legislature's prerogative, and not that of this Court, to set the length of sentences. *Id*. *Solem* was not implicated because the sentence was within the statutory guidelines, and the Legislature had set stiff penalties for convicted drug offenders. *Id*. Finally, the Court noted "where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual." *Id*. at 124.

¶40. Although not mentioned by the parties, the recent case of *Davis v. State*, 724 So. 2d 342 (Miss. 1998), is applicable to our analysis. *Davis* involved an instance where a twenty-five-year-old mother was sentenced to sixty years in prison for the sale of two-tenths of a gram of cocaine within 1,500 feet of a church. *Davis*, 724 So. 2d at 344. This Court remanded for resentencing, finding there was insufficient evidence in the record to support the maximum sentence allowable under the statute. *Id.* at 345. The dissenters in *Davis* maintained because the sentence was within the limits proscribed by the statute, there was no abuse of discretion. *Id.* at 346-49. (Smith, J. and Mills, J. dissenting).

¶41. As noted *supra*, and recognized by the *Davis* majority, sentencing is generally within the sound discretion of the trial judge and the trial judge's decision will not be disturbed on appeal if the sentence is within the term provided by statute. *Id.* at 344. The practical effect of the general rule is that a trial judge's sentencing decision has traditionally been treated as unreviewable so long as the sentence was within the statutory limits.

¶42. Judicial discretion is defined as a "sound judgment which is not exercised arbitrarily, but with regard to what is right and equitable in circumstances and law, and which is directed by the reasoning conscience of the trial judge to just result." **Black's Law Dictionary** 848 (6th ed. 1990) (*citing* ***State v. Grant***, 519 P.2d 261, 265 (Wash. 1974)). Rather than implying bad faith or an intentional wrong on the part of the trial judge, an abuse of discretion is viewed as a strict legal term that is "clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing." **Black's Law Dictionary** 10 (6th ed. 1990).

¶43. Any attempt at more concrete or concise definition of discretion would be futile. Likewise, the phrase "abuse of discretion" does not lend itself to a definitive or precise meaning. This ambiguity is necessary to allow judges enough room to exercise their own sound judgment in the cases coming before them. A more narrow definition of the term would constrict a judge's ability to do what a judge is supposed to do--make sound judgments on the issues before the court within the boundaries of the laws of this State, the Mississippi Constitution and the United States Constitution. This is an awesome responsibility and it places a great deal of power in the hands of our trial judges. This power and responsibility should not be taken lightly in any case.

¶44. The discharge of judicial duties requires consideration, deliberation and thoughtful use of the broad discretion given judges under the laws of this State.

> Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the Court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law.

*Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 866, 6 L.Ed. 204, 234 (1824).

¶45. The Legislature has not required judges to sentence offenders to a specific term for the sale of cocaine. Instead, the Legislature has provided a wide range of possible sentences, -- a sentence of from zero to thirty years upon a conviction for sale of cocaine or, a sentence of from zero years to life imprisonment without parole or probation when an applicable enhancement statute is involved. Only when a defendant has been convicted of a felony or federal crime twice previously and sentenced to two separate terms of one year or more has the Legislature removed any element of judicial discretion and mandated the defendant be sentenced to the maximum term of imprisonment allowed. Miss. Code Ann. §§ 99-19-81 to -83 (1994). The Legislature wisely provided such a broad range of sentences to allow trial judges, using their discretion, to issue appropriate sentences in each individual case. It is incumbent upon those trial judges to use this power wisely.

¶46. Here, as in *Davis*, we are faced with a first-time offender who has sold a small amount of cocaine.

Like Davis, White has been sentenced to sixty years in prison. Even though in this case we have the benefit of a presentencing report to use in our review, as in *Davis*, there is simply nothing in the record to justify a sixty-year prison term. What is clear from the record, however, is the trial judge did not exercise any discretion in sentencing White to sixty years--the maximum term allowed by statute.

¶47. Sixteen appeals of convictions involving sale of cocaine and one of the four enhancement statutes were affirmed by either the Court of Appeals or the Supreme Court in 1998. *See* Appendix. In ten of these cases imposition of the maximum term of imprisonment allowable was mandated by either § 91-19-81 (subsequent offender) or § 91-19-83 (habitual offender). Five of these sixteen cases evidenced proper use of discretionary sentencing authority based on the charges and facts of the individual cases. The sentences and fines in these five cases ranged from fifteen years to serve to thirty years to serve plus a $2,000 to $10,000 fine. In fact, a review of all sale of cocaine related cases affirmed or reversed on appeal in 1998 revealed only three instances in which a first time offender was sentenced to a term of sixty years under one of the enhancement statutes. All three sentences were issued by the same trial judge. *White v. State*, No. 97-KA-01239-SCT (Miss. June 24, 1999) (the case *sub judice*); *Davis v. State*, 724 So. 2d 342 (Miss. 1998) (remanded for resentencing); and *Lewis v. State*, No. 97-KA-00460-COA (Miss. Ct. App. Sept. 15, 1998) (a case, nearly factually identical to *Davis* and *White*, decided by the Court of Appeals three months before our decision in *Davis*.).

¶48. The Legislature has provided a wide range of possible sentences for those convicted of sale of cocaine. We are duty bound to insure this broad discretionary authority is properly put to use. The failure of our trial courts to use discretion in sentencing may result in the loss of this freedom through the adoption of sentencing guidelines as was done in the federal system. *See* U.S.S.G. §§ 1B1.1 to 8E1.3 (West 1996 & Supp 1999). For these reasons we vacate White's sentence of sixty years and remand this case for reconsideration of sentence consistent with this opinion.

## CONCLUSION

¶49. For the foregoing reasons, White's conviction of the unlawful sale of cocaine within 1,500 feet of a church is affirmed. However, White's sentence is vacated, and this case is remanded to the Copiah County Circuit Court for reconsideration of sentence resentencing consistent with this opinion.

¶50. **CONVICTION OF UNLAWFUL SALE OF COCAINE WITHIN 1,500' OF A CHURCH AFFIRMED; SENTENCE TO SERVE A TERM OF 60 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS VACATED AND REMANDED FOR RESENTENCING.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., AND BANKS, J., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY MILLS, J. McRAE, J., JOINS IN PART. COBB, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, DISSENTING:**

¶51. The Majority seems intent on not only invading the province of the trial jury and the trial judge, but also the Legislature.

¶52. This Court is not a law-making body. Rather, "[o]ur role is to determine the legislative intent and constitutionality of acts passed by the Legislature, and if we interpret a statute contrary to the intent or will of the Legislature, that body has the absolute authority to change the statute to suit its will." *Board of Sup'rs of Lamar County v. Hattiesburg Coca-Cola Bottling Co.*, 448 So.2d 917, 924 (Miss. 1984) (Hawkins, J., concurring in part and dissenting in part).

¶53. This Court in *Stromas v. State*, 618 So.2d 116, 123 (Miss. 1993), recognized that, "drug offenses are very serious, and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenses. **It is the legislative prerogative, and not this Court's, to set the length of sentences.**"*Id.* (emphasis added). Nor has the trial judge abused his discretion. Apparently, the majority simply does not approve of the severe sentence given to White and remands for re-sentencing without instruction to the trial judge. Chief Justice John Marshall, in discussing judicial self-restraint, stated: "Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or in other words, to the will of the law." *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 866, 6 L.Ed. 204, 234 (1824). The majority is without judicial self-restraint and has overstepped the boundaries of the judicial branch of government.

¶54. As to the specific facts of the case sub judice, there is no justifiable reason to remand for reconsideration of sentencing. The majority relies upon the recent case of *Davis v. State*, 724 So.2d 342 (Miss.1998). There, the Court also remanded for re-sentencing in finding that there was insufficient evidence in the record to support the maximum sentence allowable. *Id.* at 346. I maintain now, as I did in dissent in *Davis*, that the sentence is not an abuse of discretion because it is within the limits proscribed by the statute. *See Id.* at 346; *Stromas*, 618 So.2d at 124. Furthermore, the case here is even stronger than in *Davis*.

¶55. Despite the fact that Uniform Rule of Circuit and County Court (URCCC) 11.02[(6)] states that the call for a pre-sentenced investigation is discretionary with the trial judge, the *Davis* Court relied heavily upon the fact that "the trial court gave no explanation, and neither he nor we have the benefit of a pre-sentencing investigation."*Davis*, 724 So.2d at 344. In the case now at bar, the trial transcripts reveal that defense asked for and received an allocation hearing and a presentence investigation. Despite the trial court here applying URCCC 11.02, the majority remands for re-sentencing without any additional guidance other than URCCC 11.02 which the trial judge already has utilized. URCCC 11.02 is specific, yet broad, as to numerous factors which a trial court can consider prior to imposing a sentence on a criminal defendant. The rule is sufficient.

¶56. In my view, by reversing the majority is merely second guessing the sound discretion of the learned trial judge in what the majority considers to be either a rather severe sentence given to White, or just a bad statutes with which the majority disagrees. (Miss. Code Ann. §§ 41-29-139 and 41-29-142). The majority is simply now extending the already overreaching *Davis* precedent. The same result on re-sentencing should be expected.

¶57. I respectfully dissent.

**MILLS, J., JOINS THIS OPINION. McRAE, J., JOINS THIS OPINION IN PART.**

Appendix

Trial court decisions affirmed on appeal by the Mississippi Supreme Court and the Court of Appeals in 1998 involving convictions for sale of cocaine and one or more of the four enhancement statutes, Miss. Code Ann. § 41-29-142 (1993) (discretionary enhancement); § 41-29-147 (1993) (discretionary enhancement); § 99-19-81 (1994) (mandatory maximum term); § 99-19-83 (1994) (mandatory life term). "Counts" refers to the number of separate cocaine sale charges. Fine includes fine and any court costs imposed.

**Title Number County Counts Enhanced Under Years to Serve Fine**

Mandatory Sentences

Jackson v. State 96-KA-01397-COA Bolivar 1 § 99-19-83 life w/o parole$425

Burrell v. State 97-KP-00402-SCT Marion 1 § 99-19-83 & § 41-29-142 life w/o parole

Brown v. State 96-KA-00974-COA Lauderdale 1 § 99-19-81 & § 41-29-147 60 $1,000

Kimble v. State 96-KA-00539-COA Grenada 2 § 99-19-81 & § 41-29-147 60

Kraft v. State 96-KA-01122-COA Marion 1 § 99-19-81 & § 41-29-147 60

Ashley v. State 95-KA-00956-COA Pike 1 § 99-19-81 & § 41-29-147 60 $2,000,000

Jackson v. State 96-KA-00727-COA Washington 2 § 99-19-81 30 $243

Baker v. State 96-KA-00688-COA Hinds 1 § 99-19-81 30

Groves v. State 96-KA-00615-COA Harrison 1 § 99-19-81 30

Harris v. State 95-KA-01162-COA Harrison 1 § 99-19-81 30

Discretionary Sentences

Triplett v. State 95-KA-00754-COA Neshoba 2 § 41-29-147 30

Lewis v. State 97-KA-00460-COA Copiah 1 § 41-29-142 60

Bridges v. State 97-KA-00471-SCT Walthall 1 § 41-29-142 & § 41-29-147 18 $5,000

Robinson v. State 97-KA-00983-COA Clay 1 § 41-29-142 18 $10,000

Stafford v. State 97-KA-00733-COA Prentiss 2 § 41-29-142 15 $2,000

Ragin v. State 97-KA-00734-SCT Prentiss 2 § 41-29-142 15 $2,000

1. White actually submitted 2 issues with the first having four sub-parts. We find the 4 sub-issues found in issue I are more appropriately discussed as separate assignments of error.

2. Both officers testified Turner was searched prior to the buy.

3. These include domestic abuse, stealing and petty larceny. None of the instances resulted in felony convictions.

4. The trial court was not made aware of Felton's statements until over a week after trial when White filed his motion for a new trial.

5. The State's brief does not address the portions of White's argument that concern the admissibility of the cocaine.

6. URCCC 11.02 states as follows:

> Upon acceptance of a plea of guilty, or upon a finding of guilt, and where the court has discretion as to the sentence to be imposed, the court may direct that a presentence investigation and report be made.
>
> The report of the presentence investigation may contain, but is not limited to, the following information:
>
> 1. A description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;
>
> 2. Any prior criminal convictions of the defendant, or juvenile adjudications of delinquency;
>
> 3. The defendant's financial condition;
>
> 4. The defendant's educational background;
>
> 5. A description of the employment background of the offender, including any military record and including present employment status and capabilities;
>
> 6. The social history of the defendant, including family relationships, marital status and residence history;
>
> 7. Information about environments to which the offender might return or to which the offender could be sent should probation be granted;
>
> 8. Information about special resources which might be available to assist the defendant such as treatment centers, rehabilitative programs or vocational training centers; and

9. A physical and mental examination of the defendant if it is ordered by the court.