769 So.2d 210 (2000)
Elbert F. HENDERSON a/k/a Elbert Fitzgerald Henderson, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-CA-00602-COA.
Court of Appeals of Mississippi.
August 1, 2000.
Rehearing Denied October 17, 2000.
*211 Sorie S. Tarawally, Jackson, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This is an appeal from the trial court's decision, after an evidentiary hearing, to deny Elbert Henderson any relief on his post-conviction relief motion filed after he had pled guilty to, and been sentenced on, five separate counts of burglary of a dwelling. Henderson presents five issues for this Court's consideration. This Court, finding itself unpersuaded by Henderson's arguments, affirms the trial court's decision.

I.

Facts
¶ 2. Henderson was originally indicted by a grand jury of the Circuit Court of *212 Warren County in six separate indictments charging a total of ten felonies. As a part of a plea agreement with the prosecution, one of the indictments was dismissed. The remaining nine charges grew out of five separate incidents ranging in date from November 27, 1994, through August 28, 1995. The charges included three counts of burglary of an inhabited dwelling while armed with a deadly weapon and two of burglary of an inhabited dwelling. In four of the five indictments, Henderson was charged in a second count with the underlying felony alleged to have been the motivation for his breaking and entering. Two charged him with attempted rape, one charged him with rape, and the fourth charged him with capital rape.
¶ 3. In November 1995, Henderson entered a guilty plea to the burglary charges contained in the five indictments, and the charges relating to the underlying crimes were dismissed. In exchange for the guilty pleas, the State recommended to the trial court that Henderson be sentenced to fifteen years on each count, with the sentences to run consecutively. The trial court, after a lengthy inquiry in which it explored in some depth Henderson's understanding of the consequences of his plea, accepted the guilty pleas and sentenced Henderson in accordance with the State's recommendation.

II.

The Issues Presented on Appeal
¶ 4. Henderson's post-conviction relief motion claims that (a) his attorney's performance was so ineffective as to have deprived him of his constitutional right of assistance of counsel guaranteed him by the Sixth Amendment; (b) the prosecution abused its discretion in recommending the maximum sentence for an offender with no prior felony convictions; (c) the trial court acted improperly in sentencing him to the maximum on each count with the sentences to run consecutively; (d) the resulting sentence of seventy-five years for a defendant with no prior felony convictions was so harsh as to constitute the kind of cruel and unusual punishment prohibited by the Eighth Amendment; and (e) the trial court erred in permitting Henderson's former attorney who represented him through the guilty plea proceedings to testify for the state at the post-conviction relief motion hearing over Henderson's invocation of the attorney-client privilege. We will consider the issues in the same order presented by Henderson in his brief.

III.

The First Issue: Ineffective Assistance of Counsel
¶ 5. Henderson argues that his attorney did not thoroughly research the facts of his case since, had he done so, he would have discovered that Henderson was out of the state living with his sister in Illinois when two of the burglaries occurred. According to Henderson, had his attorney been more diligent, he would also have learned that another individual was picked out of a lineup as the culprit by one burglary victim. Henderson also seemed to indicate at the hearing on his post-conviction relief motion that scientific testing of a rape kit obtained after one of the crimes might have exonerated him had his attorney investigated the results.
¶ 6. To counter these allegations by Henderson, the State called Henderson's attorney who represented him through the guilty plea and sentencing. This attorney testified that he thoroughly discussed the various charges with Henderson, including the dates the crimes were alleged to have occurred. This attorney said he discussed with Henderson the possibility of an alibi defense to one or more of the crimes, but that at no time did Henderson suggest that he was out of the state at any critical time mentioned in any of the indictments. No evidence was presented at the hearing, other than Henderson's own assertions, that some other individual had been identified as the perpetrator in one of the incidents.
*213 ¶ 7. There is a presumption that an attorney representing a defendant in a criminal proceeding performed at a level of competency sufficient to satisfy the constitutional safeguards set up in the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to overcome that presumption, the complaining party must show two things: (1) counsel's performance was deficient and (2) that, but for the deficient performance, a different outcome in the proceeding would have been likely. Id.
¶ 8. When the evidence on a critical point is in conflict, the trial court sits as finder of fact in a post-conviction relief proceeding. Merritt v. State, 517 So.2d 517, 520 (Miss.1987). In this case, Henderson claims that he had a readily-available alibi defense to two of the charges that his attorney would have discovered through a reasonably competent investigation. Henderson's attorney at the time, however, relates that he had in-depth discussions with Henderson as to each of the charges, including the dates the incidents allegedly occurred and whether there was the possibility of alibi defenses. According to the attorney, Henderson gave no indication that potential alibis might exist. It is difficult to envision how an attorney in such a situation would be expected to discover the existence of possible alibi defenses when the client himself made no mention of such matters, even in the face of discussion directly relating to the issue. We cannot discover on these facts a lack of diligence on the part of Henderson's counsel. Additionally, we find Henderson's relative's one-line statement supposedly establishing his alibi defense to be somewhat less than satisfactory. In its entirety, the writing reads, "Albert (sic) Henderson lived in my home for several years, including July 15 through August 9, 1995." Even if accepted as true, this statement does almost nothing to establish an alibi defense to a criminal charge based on an incident occurring on some specific date during the indicated period. Therefore, we conclude that Henderson's claim also fails to meet the second prong of the Strickland test, since the evidence he presented that he now claims his attorney failed to unearth and utilize in his defense would not, in our view, have had any real probability of producing a different outcome.
¶ 9. Henderson's sketchy allegations regarding the likelihood that another suspect was the guilty party in one of the incidents falls far short of meeting the second prong of the Strickland test. In the first place, his "facts" to support the claim consisted entirely of his own hearsay assertions. Even accepting them as having some basis in fact, there is no indication as to the trustworthiness of evidence implicating someone else. The mere fact that suspicion at some point in an investigation may have focused on another individual does not suggest with any degree of certainty that Henderson could have been acquitted by bringing that information before a jury.
¶ 10. Defense counsel was, at all times, working uphill against a statement given by Henderson that amounted to a confession in several of the burglaries. He was certainly also aware that a number of the victims of either attempted or completed crimes of a sexual nature had positively identified Henderson as their assailant. Beyond Henderson's purported alibi defense and information possibly linking another individual to one of the crimes, Henderson presents nothing else concrete that would show how, if defense counsel had undertaken a more in-depth investigation of the matter, he might have come up with additional evidence (or a means to effectively blunt the probative value of the State's evidence) that would have created a real likelihood that he could win an acquittal for his client.
¶ 11. Henderson also claims that his counsel was deficient because he led him to believe that his sentences on the five charges could be served concurrently rather than consecutively. Henderson testified *214 to that effect at the post-conviction relief hearing; however, his former attorney testified that he had discussed the nature of the State's recommendation in some depth with Henderson in the presence of his uncle. In this case, we find it unnecessary to consider which of these conflicting versions of the facts might have seemed more credible since, no matter what discussions Henderson may have had in private consultation with his attorney, there is clear evidence that, during the plea acceptance hearing, the trial court forcefully and repeatedly explored this matter with Henderson. Time after time the trial court explained the nature of the recommended sentence, paying particular attention to the fact that the five sentences were to be served consecutively. Each time, the trial court extracted an affirmative statement from Henderson that he fully understood. An example of the trial court's persistence in ensuring Henderson's understanding of the potential sentence can be seen in the following exchange from the transcript of the plea acceptance hearing.
THE COURT: Because the district attorney has recommended consecutive. Do you understand what consecutive means? One right after another?
MR. HENDERSON: Yes, sir.
THE COURT: You finish serving one 15-year sentence and start on another 15-year sentence. Do you understand that?
MR. HENDERSON: Yes, sir.
¶ 12. The law is clear that, in instances where it is alleged that an attorney gave faulty advice or misinformation in the time preceding the plea hearing, the error is cured if the defendant unequivocally is given the correct information and indicates his understanding of it during the hearing itself. Schmitt v. State, 560 So.2d 148, 153 (Miss.1990); Riley v. State, 748 So.2d 176 (¶ 6) (Miss.Ct.App.1999). We are satisfied that the record of the trial court's efforts to fully acquaint Henderson with all of the various ramifications of his plea is more than enough to offset any claim by Henderson that his attorney failed to fully apprize him of the consequences of the anticipated sentence.
¶ 13. It must be remembered that, in this instance, Henderson was not denied a hearing on his claim of ineffective assistance of counsela complaint that often forms the basis for appeals in cases of this nature. To the contrary, he was given a full evidentiary hearing on the claim that his counsel's performance was so deficient as to deprive him of adequate representation. Having been given that opportunity, the burden was on him to show, by competent evidence, those things necessary to obtain relief. Leatherwood v. State, 539 So.2d 1378, 1381 (Miss.1989); Miss.Code Ann. § 99-39-23 (Supp.1999). In attempting to meet that burden, Henderson testified in his own behalf, making a number of assertions regarding his attorney's neglect of his duties that were refuted by the attorney himself. The trial court, sitting as finder of fact, appeared to have found the defense attorney to be the more credible witness and it is not within our authority to substitute our own view on that question for that of the trial court. Reynolds v. State, 521 So.2d 914, 918 (Miss. 1988). Additionally, the attorney's alleged deficiency for misrepresenting the effect of being sentenced consecutively on multiple felonies, even if that is accepted as true, was cured by the trial court's exhaustive exploration of the subject with Henderson on the record at the plea hearing.
¶ 14. Henderson supported his claim with an inconclusive and largely unhelpful statement from a relative which, at best, indicated a possibility that Henderson might have been outside the State when several of the crimes were alleged to have occurred. Such evidence, in our view, was not of such weight and worth as to convince us that the trial court erred in denying Henderson relief based on a claim that his attorney's performance was deficient. This issue is, from all aspects argued by Henderson, without merit.
*215 ¶ 15. Finally, we note that no evidence was developed at the hearing concerning the claim that rape kit testing after one incident produced evidence tending to exonerate Henderson. As the movant, Henderson had the burden of showing that, if the matter of this scientific testing had been diligently pursued by defense counsel, a different outcome of the case would be likely. Taylor v. State, 682 So.2d 359, 363 (Miss.1996). Despite being given the opportunity by virtue of the hearing to demonstrate such a likelihood, Henderson's inability to produce any credible evidence that this was the case, except for his own unsubstantiated assertions, leaves us convinced that the trial court was correct in denying any relief.

IV.

The Second Issue: Prosecutorial Abuse of Discretion
¶ 16. Henderson claims as a separate issue that the State abused its discretion in recommending the maximum sentence as to each guilty plea for a defendant with no prior felony convictions. In his brief, he combines this issue with his third issue regarding a claim that the trial court erred in accepting the recommendation and sentencing Henderson accordingly.
¶ 17. Henderson cites no authority for the proposition that the State has some unspecified duty to temper its recommendation regarding sentencing in exchange for an agreement by the defendant to plead guilty. A criminal proceeding is, in all key aspects, an adversarial proceeding. The adversarial nature of a criminal prosecution certainly extends to plea bargaining negotiations, which are conducted at arm's length. The State has no duty to make any recommendation at all to the trial court regarding sentencing in exchange for a defendant's plea of guilty. If there is no such duty, it is difficult to discover an obligation on the part of the prosecution to make a recommendation that, in the defendant's subjective view, results in a fair resolution of the matter. Rather, the defendant's remedy, if he is dissatisfied with the State's proposed recommendation, is to (a) rely upon the trial court, which is not bound in any event by the State's recommendation, to sentence fairly despite an unduly harsh sentence suggestion by the State or (b) simply decline to enter a plea of guilty and stand for trial.

V.

The Third Issue: Improper Conduct in Sentencing by the Trial Court
¶ 18. Henderson next argues that the trial court abused its discretion by imposing a sentence of such severity for a defendant without a prior criminal record beyond some misdemeanor convictions. He concedes that the sentence is within the limits set out in the statute, but points out that it is just barely so, since the maximum penalty permitted by statute for burglary of an inhabited dwelling at the time he was sentenced was fifteen years. When considered in conjunction with the fact that the trial court ordered the sentences to run consecutively rather than concurrently, the combined effect, according to Henderson, is so harsh as to constitute an abuse of discretion within the meaning of White v. State, 742 So.2d 1126 (Miss.1999), and Davis v. State, 724 So.2d 342 (Miss.1998). In both those cases, the Mississippi Supreme Court determined that imposing the maximum penalty of sixty years for a first offender's sale of cocaine within 1,500 feet of a church was so harsh as to constitute an abuse of the trial court's discretion afforded in such matters. White, 742 So.2d at (¶ 46); Davis, 724 So.2d at (¶ 8). In White, the supreme court vacated the sentence despite a finding that the sentence was neither outside the statutory limits nor was it so disproportionate to the crime committed as to invoke constitutional considerations of cruel and unusual punishment. White, 742 So.2d at (¶ 49). Thus, Whiteappears to create a largely subjective standard where relief is appropriate *216 when the reviewing court arrives at the conclusion that the trial court was unduly harsh in meting out punishment.
¶ 19. We find this case to bear little relation to the considerations raised in Davisand White. Both of those cases involved a single incident for a first-time offender where an already-severe maximum punishment was doubled by an enhancement statute because the offense, apparently due to happenstance and nothing more, occurred within fifteen hundred feet of a church, though there was no indication that the incident impacted adversely on any aspect of the particular church's activities. In this case, though Henderson had no previous felony convictions, the trial court was certainly aware that this was not a one-time incident since Henderson was pleading to a series of burglaries that occurred over a space of several months. Thus, any thought that, as in Davisor White, the incident might have been simply an isolated instance of poor judgment on the part of a person otherwise not disposed to recurring criminal behavior was dispelled by the very nature of the plea agreement itself.
¶ 20. Additionally, though a series of five sentences of the maximum allowable under the statute, all to run consecutively, on its face is admittedly harsh, when considered in context, we do not think the sentences to be unduly harsh. The trial court, in considering the propriety of the sentence recommendation by the State, was certainly entitled to take into account the fact that Henderson himself had bargained for and agreed to the sentence recommendation. There can be little doubt that at least part of Henderson's motivation to agree to such a facially harsh sentence was that he was, based on the pending charges against him, subject to substantially greater penalties. Having been indicted on a total of ten felonies, Henderson was at risk of sentences running to twenty-five, rather than fifteen years on the three burglary charges that originally included a claim that he was armed with a deadly weapon at the time of the crime. The various sexrelated crimes which were dropped carried potential sentences as high as life in prison.
¶ 21. Though Henderson did not plead to any of these crimes, it was appropriate for the trial court to consider the fact that these charges were being dismissed as a part of the plea agreement reached with the prosecution in determining the appropriateness of the sentence. State v. Lowery, 642 P.2d 515, 518 (Colo.1982); Miller v. State, 709 N.E.2d 48, 49 (Ind.Ct.App. 1999); State v. Gunter, 525 So.2d 594, 596 (La.Ct.App.1988); State v. Thomas, 6 Neb. App. 510, 574 N.W.2d 542, 546 (1998). When it is understood that, by pleading to multiple counts of simple burglary, Henderson escaped substantial jeopardy for a number of sex-related offenses that carried potentially-lengthy sentences, the initial impression one gets that Henderson's sentence was impermissibly harsh disappears in large part.
¶ 22. Having bargained for a recommended sentence that, though heavy, was substantially less than his potential exposure had he persisted in going to trial on all charges, Henderson ought not to now be heard to argue that the sentence he agreed to accept is, on second thought, unduly harsh. Absent a finding that the sentence constituted constitutionally prohibited cruel and unusual punishment, we conclude that the severity of the sentence is not so great as to offend fundamental notions that the punishment ought to be commensurate with the crime.
¶ 23. On the facts of this case, we do not think that the sentence on these five crimes raises a threshold question of unduly harsh punishment that would require the in-depth analysis set out in Whiteand Davis. It is difficult to think of Henderson as a first offender entitled to special consideration in sentencing when one understands that he pled guilty to a series of burglaries extending over a period of several months. While the guilty pleas may have come all at once, the criminal *217 conduct for which he was to be punished did not. Rather, the facts tend to indicate an individual committed to a continuous course of criminal behavior that went unchecked for several months. That raises different concerns from the situation where a defendant has committed an apparently isolated breach of the law that seems inconsistent, insofar as the record reveals, with the remaining course of that defendant's life.

VI.

The Fourth Issue: Eighth Amendment Concerns with the Sentence
¶ 24. In a separate issue, Henderson claims that his sentences, when considered in the aggregate, were so lengthy that the constitutional protection afforded an individual against cruel and unusual punishment was violated, entitling him to some measure of relief. When viewed in the context of Henderson's potential maximum jeopardy under all of the charges pending against him, some of the more serious of which were dismissed as a part of the plea bargain, we are unpersuaded that a combined sentence of seventy-five years triggers concerns of disproportionality so great as to invoke constitutional considerations. For many of the same considerations discussed in the previous issue, we find a claim that the sentence in this case was so harsh as to constitute cruel and unusual punishment to lack merit.

VII.

The Fifth Issue: Attorney-Client Privilege Violation
¶ 25. Henderson claims that it was reversible error for the trial court to permit the State to call Henderson's former attorney to testify concerning discussions he had with Henderson in the time leading up to the entry of Henderson's plea. Henderson raised a timely objection to the attorney testifying, asserting the attorney-client privilege. The trial court overruled the objection to the limited extent that the court said it would permit the attorney to testify as to those matters which Henderson claims he was not told about by his counsel. The trial court concluded that, by testifying that the attorney had failed to inform Henderson on those issues, Henderson had waived the attorney-client privilege.
¶ 26. Having claimed that his attorney was deficient in his representation, Henderson put in issue the question of counsel's performance of the duty owed Henderson as his client. Mississippi Rule of Evidence 502(b) extends to a client a general "privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client...." M.R.E. 502(b). However, a later subsection of Rule 502 states unequivocally that "[t]here is no privilege ... [a]s to any communication relevant to an issue of breach of duty by the lawyer to his client...." This seems entirely consistent with Mississippi case law that predates the adoption of the Rules of Evidence. In Bennett v. Statea prisoner convicted of murder sought relief from the criminal conviction though the time to appeal had expired. He did so by claiming that he missed the time to appeal because his retained counsel had not informed him that, if he could not afford retained counsel to prosecute an appeal, the State was obligated to appoint counsel for the appeal. Bennett v. State, 293 So.2d 1, 5 (Miss.1974) (overruled on other grounds). The State called the attorney for the purpose of having him confirm that he did, in fact, discuss this aspect of a possible appeal with Bennett; however, the trial court barred the testimony upon Bennett's invoking the attorney-client privilege. Id. The supreme court found this to be error, saying that "[w]hen Bennett testified that his trial counsel had never discussed with him the possibility of an appeal he waived any privilege with respect to communications with *218 counsel on this issue." Id. This issue is clearly without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY DENYING POST CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.